**OSBURN CALIFORNIA CORPORATION v. WELCH, Collector of Internal Revenue.**

No. 5963.

Circuit Court of Appeals, Ninth Circuit.
March 24, 1930.

**42**

Claude I. Parker and Ralph W. Smith, both of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter, Asst. U. S. Atty., both of Los Angeles, Cal. (C. M. Charest, General Counsel, Bureau of Internal Revenue, of Washington, D. C., and Alva C. Baird, Sp. Atty., Bureau of Internal Revenue, of Los Angeles, Cal., of counsel), for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge.

In December, 1923, M. R. Osburn was the owner of 999 shares of the capital stock of the Dominguez Land Corporation, of the value of $199,700. On December 10 of that year the Osburn California Corporation was organized under the laws of the state of California, with an authorized capital of $200,-000, divided into 2,000 shares of the par value of $100 each. Upon the formation of the last-mentioned corporation it acquired and took over from Osburn the 999 shares of the capital stock of the Dominguez Corporation and issued to him in payment therefor 1,997 shares of its own capital stock, of the actual and par value of $197,700. February 5, 1924, the Osburn Corporation acquired one additional share of the Dominguez stock from Osburn for $201.90, and on the same day sold the entire 1,000 shares for $201,-925. December 31, 1923, the Osburn Corporation received a capital distribution from the Dominguez Corporation of $4,995, on account of the stock so acquired, and in its income tax return for the calendar year 1924 it reported a net profit arising from the sale of the Dominguez stock in the sum of $7,-018.10, being the difference between the selling price of the stock and the price paid for it, with the capital distribution added. Thereafter the Commissioner of Internal Revenue determined that the proper basis for determining the gain or loss from the sale of the Dominguez stock by the Osburn Corporation was the same as it would be in the hands of Osburn, the transferor, and computed the tax on the basis of the cost of the stock to Osburn, less certain liquidating dividends received by him. The tax thus computed was paid under protest, and the present action was instituted by the Osburn Corporation against the collector of internal revenue to recover the additional tax so exacted. A demurrer was sustained to an amended complaint, setting forth the foregoing facts, and from the judgment of dismissal the present appeal was prosecuted.

The Dominguez stock was acquired by the appellant after December 31, 1920, in the manner specified in paragraph 8 of section 204(a) of the Revenue Act of June 2, 1924 (43 Stat. 259, 26 USCA § 935(a)(8), and it is there expressly provided that the basis for determining the gain or loss from the sale or other disposition of property acquired after December 31, 1920, shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

It must be conceded that in making the assessment complained of the Commissioner of Internal Revenue acted within the scope of his authority and within the express terms of the statute. It is suggested that the court should construe this feature or provision of the Revenue Act of 1924 as prospective only, but the act is in express terms made applicable to transfers made after December 31, 1920, and there is no room for construction in this regard.

Again, it is contended that the Dominguez stock became capital in the hands of the Osburn Corporation, because section 11 of article 12 of the California Constitution provides that no corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and that Congress can only tax income as distinguished from capital. But Congress has power to impose a tax upon incomes and, as an incident, to define what shall constitute income; and the power of Congress in that

regard is not limited or circumscribed by the laws of the several states. True, the federal government usually recognizes rules of property in the state, but it is not compelled to recognize transfers which result in no substantial change ·in beneficial ownership. The notion that a corporation is an entity separate and distinct from its stockholders is a fiction of law which the court will regard for some purposes and disregard for others. For tax purposes, this fiction is often disregarded. The act permitting affiliated corporations to file consolidated returns is an illustration. Under the Revenue Act of 1921 (42 Stat. 227), a property owner might transfer his property to a corporation of his own creation, taking the stock of the corporation in payment, and then sell the property through the corporation, thus escaping any tax, based on the transfer or transaction. But this right existed because of the law and not in defiance of the law. It was entirely competent for Congress to provide, as it has, that the obligation to pay the tax in such cases should follow the transfer into the hands of the new owner. Looking only to the future, such an act would not seem open to criticism, much less to objection on constitutional grounds, and making the act retroactive does not, in our opinion, make it arbitrary or confiscatory. Many past revenue acts have been made retroactive, as will appear from the long list of cases cited in the dissenting opinion of Mr. Justice Brandeis in Untermyer v. Anderson, 276 U. S. 440, 447, 48 S. Ct. 353, 72 L. Ed. 645, and in many of the cases thus cited the retroactive provisions of the acts under consideration worked far greater injustice to the complaining parties than is the case here. In only two or three instances, so far as we are advised, has the Supreme Court declared revenue acts invalid on the ground that they were arbitrary and confiscatory. Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Blodgett v. Holden, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. 206; Untermyer v. Anderson, supra. The present case is, we think, readily distinguishable from them. In any event, we are not convinced that the act under consideration is void for any of the reasons urged against it, nor do we harbor any serious doubt on that question. The conclusion thus announced is in harmony with the decision of the Court of Claims, under similar facts, in Newman, Saunders & Co. v. United States, 36 F.(2d) 1009.

The judgment is affirmed.