## AMERICAN COMPRESS & WAREHOUSE CO. v. BENDER.*

### No. 7138.

Circuit Court of Appeals, Fifth Circuit.

May 10, 1934.

W. Scott Wilkinson and C. Hoffman Lewis, both of Shreveport, La., for appellant.

J. P. Jackson, Sp. Asst. to the Atty. Gen., Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., Wright Matthews, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., and Philip H. Mecom, U. S. Atty., of Shreveport, La., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

On July 27, 1922, the appellant was organized as a corporation under the laws of Louisiana, with a capital stock of $500,000 divided into 5,000 shares of the par value of $100 each, and on the same date issued 2,280 shares of that stock to the Louisiana Compress Company (hereinafter referred to as the Louisiana Company), in exchange for property of the Louisiana Company transferred by it to the appellant, which property was appraised at a value of $228,000, and on the same date appellant issued 2,720 shares of its capital stock to the Shreveport Compress & Warehouse Company (hereinafter referred to as the Shreveport Company) in exchange for property of the Shreveport Company transferred by it to the appellant, which property was appraised at a value of $272,000. On August 2, 1922, the Shreveport Company sold 1,813 of its shares of appellant's stock to the Louisiana Company for $100,000. In making its tax returns for the fiscal years ended, respectively, June 30, 1924, and June 30, 1925, appellant took depreciation deductions at the rate of 10 per cent., based on a valuation of $188,000 for properties acquired from the Louisiana Company

*Rehearing denied June 25, 1934.

and $197,000 for the properties acquired by appellant from the Shreveport Company. The tax officials refused to allow those deductions, and treated the above-described transaction as a reorganization whereby the Louisiana Corporation, by acquiring in excess of 80 per centum of the total number of shares of appellant's capital stock, came "in control" of appellant, with the result that appellant was required to use the same basis and the same rate for depreciation purposes as the Louisiana Company had used in prior years. With regard to the assets acquired by appellant from the Shreveport Company, appellant was allowed a new basis and a new rate; the basis being determined by considering the stock of appellant received by the Shreveport Company in exchange for its property transferred to appellant as worth $55.11 per share. The appellant paid the tax based on those adjustments, filed a claim for refund, which was rejected, and brought this suit to recover the amount which was the subject of the claim for refund; the appellant contending that the par value of its stock was the value of the assets for which that stock was issued, and that the rate of depreciation should be 10 per cent. By his amended answer to appellant's petition, filed February 29, 1932, the collector of internal revenue denied the validity of the claim asserted by the appellant, and set up that the Commissioner of Internal Revenue was in error in the adjustments made, in that an effect of the above-described transaction was that immediately after the transfers of properties of the Lousiana Company and of the Shreveport Company in exchange for stock of appellant the Louisiana Company and the Shreveport Company were in control of appellant, with a result that for each of the fiscal years in question the appellant was liable for a stated amount of tax in addition to the amount determined by the Commissioner of Internal Revenue. The appellant by pleading set up that a claim that it owed an amount of tax in addition to the amounts determined by the Commissioner of Internal Revenue was barred by the four-year limitation prescribed by section 277 (a) (1) of the Revenue Act of 1924 (26 USCA § 1057 note). The appellee admitted that such bar existed, and did not claim that an additional amount of tax was enforceable against the appellant. The parties stipulated that, if the properties of the Louisiana Company and of the Shreveport Company were acquired by the appellant pursuant to a reorganization of those two corporations, no new basis for depreciation was established, and appellant was not entitled to recover. The court (a jury having

been waived) reached the conclusion that the transaction whereby properties of the Louisiana Company and of the Shreveport Company were transferred in exchange for stock of the appellant amounted to a reorganization of the transferring corporations, and that appellant was not entitled to any recovery.

■ The ruling under review was based upon section 204 (a) (8) of the Revenue Act of 1924 (26 USCA § 935 (a) (8), which provides as follows: "Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * * (8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 [section 934] (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made." Paragraph (4) of subdivision (b) of section 203 of the Revenue Act of 1924 (26 USCA § 934 (b) (4), referred to in the last above set out provision, reads as follows: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." Section 204 (c) of the Revenue Act of 1924 (26 USCA § 935 note) reads as follows: "The basis upon which depletion, exhaustion, wear and tear and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that * * ⁄ * " —the stated exceptions dealing with the cases of mines and oil and gas wells, none of them being pertinent in this case.

A transaction comes within above set out

provisions if the property in question is transferred to a corporation by two or more persons (the term "person," as defined by section 2 (a) of the same act [26 USCA § 1262 (a)] including a corporation) solely in exchange for the transferee's stock, and immediately after the exchange the transferors are in control of the transferee corporation (the term "control" meaning ownership of at least 80 per centum of the stock of the transferee corporation [26 USCA § 934 (i)]), and the stock received by each transferor is substantially in proportion to his or its interest in the property prior to the exchange. The transaction in question in the instant case has all the features or elements required to make it one within above set out statutory provisions. Properties of the Shreveport Company and of the Louisiana Company were transferred to appellant, a corporation, solely in exchange for stock of the appellant. Immediately after the exchange, the two transferor corporations were in control of the appellant in consequence of their ownership of all of appellant's capital stock; and the amount of stock received by each of the transferor corporations was, not merely substantially, but exactly, in proportion to its interest in the property prior to the exchange, one of the transferor corporations having received stock of the appellant having a par value of $272,000 in exchange for property having an assessed value of $272,000 and the other transferor corporation having received stock of the appellant having a par value of $278,000 in exchange for property having an assessed value of $278,000. It is not material that at a time subsequent to the consummation of the exchange of property solely for corporate stock the transferor corporations ceased to be in control of the transferee corporation.

It was contended in argument for the appellant that the transaction in question is different from the one provided for by the statute (section 203 (b) (4), 26 USCA § 934 (b) (4) by reason of the circumstance that the transferred property was not owned jointly or in common by the transferor corporations, each of which transferred to appellant property owned solely by it. The language of the just referred to provision indicates that the framers of it had in mind what frequently occurs in bringing a corporation into existence. It is by no means an unusual occurrence for a corporation to be a result of several separate owners of different properties associating themselves for the purpose of bringing about the creation of a corporation by severally subscribing for stock in the proposed corporation, each subscriber for stock agreeing to pay therefor by transferring to the corporation property solely owned by him at a valuation equal to the amount of stock subscribed for by him. To say the least, the language of the provision is consistent with the existence of an intention to make it applicable whether the property transferred by two or more persons to a corporation solely in exchange for stock of such corporation was owned jointly or in common by the transferors or consisted of separate parcels or groups of properties separately and solely owned by the several transferors, respectively. We think the contention under consideration is not sustainable.

The statute deals with a transaction whereby the relation of one or more persons to property is so changed that, upon their ceasing to be owners of that property, they come into control of a corporation upon the latter becoming the owner of that property by the former owners thereof transferring it to that corporation solely in exchange for stock of that corporation. The statute evidences a recognition that the transaction therein described effects a change in form, but not in substance, of the beneficial interests of the transferors in the transferred property. The transaction described in the statute lacks a distinguishing characteristic of a sale, in that, instead of the transaction having the effect of terminating or extinguishing the beneficial interests of the transferors in the transferred property, after the consummation of the transaction the transferors continue to be beneficially interested in the transferred property and have dominion over it by virtue of their control of the new corporate owner of it. Statutory consequences of the recognized continued existence of the beneficial interests of the transferors in the transferred property immediately after the exchange of it for corporate stock is consummated are that the transaction does not make the parties to it liable for profits taxes, and does not give rise to a new basis for computing the deduction allowable to the transferee corporation for depletion or depreciation of the transferred property. Cortland Specialty Co. v. Commissioner of Internal Revenue (C. C. A.) 60 F.(2d) 937; Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue (C. C. A.) 57 F.(2d) 188. To attribute to the exchange now in question of property solely for corporate stock the effect of causing gain or loss to a party to that exchange, or of justifying the adoption of a new basis for computing depletion or depreciation of the trans-

ferred property, would involve an obvious disregard of substance and reality, as, immediately after the exchange was effected, the beneficial interests of the transferors in the transferred property remained in existence and unimpaired, being substantially the same as they were before the exchange occurred; no third person then having acquired any beneficial interest in property which was a subject of the transfer. It is apparent that property owners do not gain or lose by transferring their properties solely in exchange for all the capital stock of a corporation brought into existence to take over that property where such stock is apportioned between the transferors in accordance with their respective beneficial interests in the transferred property.

In behalf of the appellant, it was contended that the statute (section 204 (a) (8), 26 USCA § 935 (a) (8), which was enacted June 2, 1924, was not intended to apply to a transfer such as the one now in question, which occurred in July, 1922, prior to the enactment of that statute, and that by applying it to that transfer the statute is given retrospective operation. The language of the statute makes it abundantly plain that it was intended to cover acquisitions of property which occurred prior to the enactment of the provision, as any transfer made "after December 31, 1920," comes within the express language used. That language is inconsistent with the existence of an intention to make the statute applicable only to transfers occurring after the date of the enactment of the statute. Osburn California Corporation v. Welch (C. C. A.) 39 F.(2d) 41. The decision under review did not have the effect of giving a retrospective operation to the statute, as appellant's taxes which were in question were those for the fiscal years ended, respectively, June 30, 1924, and June 30, 1925, liability for which attached after the enactment of the statute. We think the contention under consideration is without merit.

Under the clear language of the statute, the allowance to appellant for depletion or depreciation is governed by the same bases and rates as would have been applicable if the Louisiana and Shreveport Companies had not transferred their properties to the appellant solely in exchange for the latter's stock. It appearing from the record that the appellant underpaid its taxes for the years in question, the ruling that appellant was not entitled to recover anything was not erroneous.

The judgment is affirmed.