## SNEAD v. JACKSON SECURITIES & INVESTMENT CO.

### No. 7358.

Circuit Court of Appeals, Fifth Circuit.

April 12, 1935.

SIBLEY, Circuit Judge, dissenting.

————————◆————————

Maurice J. Mahoney, Atty., Department of Justice, of Washington, D. C., and Jim C. Smith, U. S. Atty., of Birmingham, Ala., for appellant.

Lee C. Bradley, Jr., of Birmingham, Ala., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a judgment against appellant, a collector of internal revenue, in the sum of $51,286.50, an amount alleged to have been illegally assessed against appellee as income taxes for the year 1928, with interest thereon, demanded and collected by appellant. The case was tried by the court, without the intervention of a jury, on stipulations as to the material facts. The assignments of error run to the conclusions of the District Court as to the ultimate facts and the provisions of law applicable thereto.

From the findings by the court, supported by the stipulations, the following material facts appear: Appellee, Jackson Securities & Investment Company (hereafter referred to as investment company) was organized under the laws of Delaware with its entire authorized capital stock fixed at 5,000 shares, of nominal or no par value. On January 22, 1925, pursuant to a resolution adopted by its board of directors the same day, the investment company exchanged 4,095 shares of its stock, all that was then or thereafter issued, for various shares of stock, owned by five individuals, as follows: F. M. Jackson received 2,705 shares, for which he transferred 750 shares of capital stock of the National Cast Iron Pipe Company (hereafter referred to as pipe company), 500 shares of the capital stock of the Jefferson County Building & Loan Association, 700 shares of the capital stock of the Perfection Mattress & Springs Company, and 64 shares of the capital stock of the Jackson Securities Company; Mrs. Miriam M. Jackson received 1,175 shares, for which she transferred 250 shares of pipe company stock, 500 shares of Jefferson County Building & Loan Association stock, and 500 shares of the Perfection Mattress & Springs Company stock; Ervin Jackson received 125 shares, for which he transferred 50 shares of Pipe Co. stock; Chappell Cory received 85 shares, for which he transferred 34 shares of Jackson Securities Company stock; Gladys Buffington received 5 shares for which she transferred 2 shares of Jack-

son Securities Company stock. The fair market value per share of the stock exchanged on the date of transfer, was as follows: Investment company, $200; pipe company, $500; Jefferson County Building & Loan Association, $100; Perfection Mattress & Springs Company, $120; and Jackson Securities Company, $500. (A simple calculation demonstrates that each of the individual transferors received stock of the investment company exactly equal in value to his interest in the other stock transferred.) None of the transferors had any interest, legal or equitable, in any of the stock transferred by the others. All the stock transferred to the investment company had been acquired by the transferors after February 28, 1913. The investment company was not at any time a dealer or trader in corporate stocks or securities. In 1928 the investment company sold the identical 1050 shares of pipe company stock acquired by it on January 22, 1925, at $350 per share, a total of $367,500, a loss of $157,500 measured by the fair market value of $525,000, which it had on January 22, 1925, when acquired. The investment company returned no income for taxation for 1928, claiming a net loss. The Commissioner held that the basis for determining loss or gain on the pipe company stock was what it had cost the transferors, $39.51 per share, a total of $41,-485.50, and determined a deficiency of taxes of $52,806.34, with interest amounting to $4,-723.89, a total of $57,530.23. This was paid on demand to appellant. The investment company filed claim for a refund of the entire amount paid, which was allowed to the extent of $5,731.05 principal and $512.68 interest, a total of $6,243.73, reducing the assessment to the amount for which judgment was rendered.

The case is governed by the Revenue Act of 1928, the pertinent provisions of which are as follows:

"Sec. 112 (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111 [section 2111], shall be recognized, except as hereinafter provided in this section.

"(b) * * * (5) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

"Sec. 113(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—* * *

"(8) If the property was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) [section 2112 (b) (5)] (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made;" 26 USCA §§ 2112 (a), (b) (5), 2113 (a) (8).

To restate the transaction briefly, the salient facts are these: By one transaction a corporation exchanged all its outstanding capital stock for property of equal value, consisting of various shares of stock of four other corporations, separately owned by five individuals, who separately received the number of shares of the corporation exactly equal in value to the value of the property they transferred. Immediately thereafter the transferors were in control of the corporation, owning over 80 per cent. of both the authorized and outstanding capital stock.

It is not disputed that the tax was properly assessed if the transaction falls within the provisions of section 112. However, it is contended by appellee that section 112 does not apply if property transferred by two or more individuals is separately and not jointly owned. We gather from the argument of appellee that the contention is based on the assumption that the part of the section coming after the semicolon is to be considered as a proviso qualifying and controlling what goes before; that within the meaning of the statute interest is not equivalent to ownership or value and connotes control; that, unless the transferors had joint control of the property exchanged, substantially equal to the joint control of the corporation immediately acquired, the transfer does not fall within the terms of the section. No authorities in point are cited in support of the contention, and we know of none.

The statute must be given a practical construction. It is evident that it was the intent of Congress to permit persons to transfer their property to a corporation for convenience in accomplishing some lawful, practical purpose, provided no immediate gain accrues to the transferors and no substantial change occurs in the beneficial ownership and control of the property.

It is immaterial to the transferee whether the property transferred was owned jointly or separately. In either event the corporation receives the whole in full legal ownership and it becomes merged with its other assets. In no event could the transferor retain any distributable interest in the specific property transferred. His equitable ownership is in all the assets of the corporation, in common with other stockholders and in proportion to the number of shares he holds. If he receives stock of the corporation giving him an equitable interest in all its assets, substantially of the same value as his interest in the property transferred, he has neither lost nor gained by the transaction, and the provisions of the statute apply, if its other requirements are complied with. On the other hand, if he receives stock of more value, the exchange is equivalent to a sale from which profit is derived. Clearly, it was to prevent a transferor thereby escaping taxation that the provision was inserted in the section. If Congress had intended to make a distinction between property separately owned and jointly owned, it would have been very easy to say so. The contention of appellee is without merit.

The stock received by the investment company must be considered as a whole. It is immaterial that it was not all sold at one time. The corporation could not evade the provisions of section 113 by selling the property piecemeal.

All the elements necessary to bring the transaction within the letter and intent of sections 112 and 113 are present. The profit on the subsequent sale of the pipe company stock was correctly determined by the Commissioner under the provisions of section 113. The following authorities support this conclusion: Newman, Saunders & Co. v. United States (Ct. Cl.) 36 F.(2d) 1009; Osburn California Corporation v. Welch (C. C. A.) 39 F.(2d) 41; T. W. Phillips, Jr., Inc., v. Commissioner (C. C. A.) 63 F.(2d) 101; American Compress & Warehouse Co. v. Bender (C. C. A.) 70 F.(2d) 655.

Reversed and remanded.

SIBLEY, Circuit Judge (dissenting).

The taxpayer, Jackson Securities & Investment Company, in 1928 sold 1,050 shares of cast-iron pipe stock which in January, 1925, at its organization it had taken over from the three Jacksons at $500 per share. The question is whether the cost basis for ascertaining profit or loss in the sale is the price at which the corporation then took it or a much less price which had previously been paid for it by the Jacksons. The government contends that the latter basis is fixed by section 113 (a) (8), 26 USCA § 2113 (a) (8), quoted in the majority opinion because the new corporation got the stock from the Jacksons in such a transaction as is described in section 112 (b) (5), 26 USCA § 2112 (b) (5). Now it is true that the Jacksons transferred the cast-iron pipe stock to the new corporation solely for stock of the latter, and immediately afterwards owned more than 80 per cent. of the new corporation's stock, and thus were in control of the corporation. If this were all, there would, according to the statutory provisions, be generally no real sale of the pipe line stock by the Jacksons in that transaction, no gain or loss realized by them, and no new cost basis acquired by the corporation. But section 112 (b) (5) contains this exception: "In the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." The legislative thought is that, if the individuals after the exchange own through their acquired stock the same proportionate interest in the property put into the corporation that they owned before, and also control the corporation, there has been no real sale of the property. Now prior to this exchange F. M. Jackson had 750 shares of the pipe line stock, Mrs. Jackson had 250, and Ervin Jackson had 50. The proportion of their several interests in the whole 1,050, expressed in percentages, was 71.4 per cent., 23.8 per cent., and 4.7 per cent. The new stocks which they received in the transaction were respectively 2,705, 1,175, and 125 shares out of a total of 4,095 issued. The proportion of their stocks in the corporation, and consequently of their interest as stockholders in the 1,050 shares of cast-iron pipe stock, became in percentages 63.3 per cent., 28.4 per cent., and 3.7 per cent., respectively. If the corporation had thereupon distributed its cast-iron pipe stock, F. M. Jackson would have gotten 664.6 shares

instead of his original 750 shares; Mrs. Jackson 298.2 instead of the 250 she had; and Ervin Jackson 38.8 shares instead of the 50 he had. Remembering that each share represented $500, these figures show that the transaction was a substantial change of interest, an actual sale; or, to put it in the words of the statute, the two or more persons interested in this cast-iron pipe stock did not each have substantially the same proportionate interest in the corporation to which they transferred it as they previously had in the property which was transferred. The District Judge sitting as jury was well warranted in so finding. The Jacksons should account for gain or loss in selling to the corporation, and the corporation should be accorded a new cost basis as a purchaser of this stock.

I agree that it was not material whether the Jacksons originally owned the cast-iron pipe stock jointly or separately, since they all transferred it in a single transaction and since the shares were identical in nature and value. The judgment is correct, for the reason that the transaction substantially altered the proportionate interest of the Jacksons in the property which they transferred to the corporation. Two other persons participated in the exchange who before had no interest in the cast-iron pipe stock, and they by this very same transaction acquired interests in that stock through their stock in the new corporation, and the Jacksons in like manner acquired interests in properties contributed by these others. Each participant no doubt really and not nominally valued his contribution, and there were real sales to the corporation which the law should and does recognize as such.