## UNITED CARBON CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4151.

Circuit Court of Appeals, Fourth Circuit.

May 4, 1937.

John W. Davis, of New York City (Robert A. Littleton, of Washington, D. C., and Marion N. Fisher, of New York City, on the brief), for petitioner.

Harry Marselli, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The question presented in this case involving income taxes is whether the basis for computing depreciation and depletion allowances on exhaustible assets acquired from certain transferors by the taxpaying corporation in exchange for its capital stock is the fair market value of the assets at the time of acquisition, or the cost thereof to the transferors. The basis upon which depletion, exhaustion, wear and tear, and obsolescence are allowed by statute is the same as is provided for the purpose of determining the gain or loss upon the sale or other disposition of the property. This is the provision of the Revenue Act of 1926, § 204 (c) 44 Stat. 9, 14, 16, which is the statute applicable to 1925, the tax year in question, because the income tax provisions of the Act took effect on January 1, 1925. The basis for determining the gain or loss from the sale or other disposition of the property acquired after February

28, 1913, is generally the cost of such property, section 204 (a), 44 Stat. 9, 14. However, there are certain exceptions. For example, if the property was acquired after December 31, 1920, by a corporation by the issuance of stock or securities in connection with a transaction described in section 203 (b) (4), then the basis for determining the gain or loss is the same as it would be in the case of the transferor, section 204 (a) (8).

Section 203 (b) (4) is as follows: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

"Control" means the ownership of at. least 80 per cent. of the voting stock and of the total number of shares of all other classes of stock of the corporation, section 203 (i).

The pending case turns upon the proper interpretation of section 203 (b) (4), particularly the concluding provision thereof which limits its application in the case of a transfer of assets to a corporation by two or more persons in exchange for stock or securities thereof to transactions in which "the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

United Carbon Company, the taxpayer, was organized under the laws of Delaware as the result of a plan to bring together in one organization the assets of various corporations engaged in the manufacture of carbon black. Officers of three such corporations entered into negotiations with thirteen corporations and one partnership engaged in the business. Prior to the organization of the taxpayer, offers on behalf of the incorporators for the acquisition by the taxpayer, when organized, of of the inventories and other assets of the several producers were made, the inventories to be paid for in cash, and the other assets in shares of preferred stock and voting trust certificates representing shares of common stock of the taxpayer in stated amounts. None of the producers were informed as to the price to be given for the properties of the others. By February 17, 1925, the offers were accepted in whole or in part; on February 19, 1925, the taxpayer was organized with a total authorized capital of 100,000 shares preferred stock of the par value of $100 per share and 400,000 shares of common stock of no par value; and on February 21, 1925, the board of directors ratified the offers. On February 23, 1925, the issuance of $2,500,000 in bonds was authorized to provide funds for the cash payments and working capital. The taxpayer then acquired from the transferors the inventories and other assets in accordance with the offers.

We are concerned only with the transfers of property to the corporation in exchange for its stock, for it is only to transfers of this kind that section 203 (b) (4) applies. Confining ourselves thereto, table No. 1, set out below, shows in the case of each transfer the cost of the property to the transferor; the value thereof at the time of the transfer in 1925; the number of shares of preferred and common stock received by the transferor in exchange for its property, and the aggregate value of the shares so received, obtained by valuing the preferred stock at its par value of $100 per share and the common stock at $26.875 per share, a figure obtained by deducting the value of all the preferred stock from the value of all the properties transferred, and dividing the difference by the number of common shares. Table No. 2 shows in the case of each transfer the percentage in value of the total property transferred; the percentage in value of the total stock received; the difference between these two percentages; the percentage of profit or loss, and the amount of profit or loss of the transferor. Looking at these figures from the standpoint of the corporation, it is noticeable that the basis for the calculation of depreciation and depletion allowances will be $7,858,863.45 if the aggregate cost of the properties to the transferors is adopted, or $9,933,204.12 if the value of all the property transferred at the time of the exchange is adopted. From the standpoint of the transferors it is noticeable that nine of the transferors made an aggregate profit of $351,228.49, while five of the transferors suffered a corresponding aggregate loss of equal amount.

| No. 1 | Cost of Assets to Transferor | Value of Assets at Time of Transfer | Number of Shares Received by Transferor | | Aggregate Value of Stock Received |
|---|---|---|---|---|---|
| | | | Preferred | Common | |
| Consolidated Carbon Co. | $ 713,599.86 | $1,091,110.73 | 5,345 | 21,380 | $1,109,102.37 |
| Standard Carbon Co. | 1,481,968.98 | 1,369,672.63 | 6,000 | 24,000 | 1,245,016.81 |
| United Oil & Natural Gas Products Corp. | 978,332.83 | 1,241,857.06 | 5,900 | 23,600 | 1,224,266.39 |
| Central Carbon Co. | 606,007.87 | 717,120.94 | 3,836 | 15,344 | 795,980.69 |
| Pelican Carbon Co. | 517,544.12 | 474,535.90 | 1,637 | 6,550 | 339,735.74 |
| Louisiana Gas Products Corp. | 385,013.95 | 393,828.47 | 1,945 | 7,780 | 403,592.92 |
| Liberty Carbon Co. | 213,856.02 | 256,293.92 | 1,506 | 6,024 | 312,499.17 |
| Louisiana Carbon Co. | 261,170.50 | 370,754.91 | 1,825 | 7,300 | 378,692.62 |
| Green River Carbon Co. | 37,755.19 | 54,725.07 | 250 | 1,000 | 51,875.69 |
| Cosmos Carbon Co. | 802,002.05 | 1,936,782.56 | 8,990 | 35,960 | 1,865,450.10 |
| Cumberland Carbon Co. | 20,000.00 | 51,527.50 | 250 | 1,000 | 51,875.69 |
| Natural Gas Products Corp. | 277,027.63 | 529,169.23 | 2,645 | 10,580 | 548,844.96 |
| Humphreys Carbon Co. | 1,076,758.55 | 1,109,925.86 | 6,000 | 24,000 | 1,245,016.81 |
| Tampico Gas Co. | 487,825.90 | 335,899.34 | 2,000 | 6,000 | 361,254.16 |
| | $7,858,863.45 | $9,933,204.12 | 48,129 | 190,518 | $9,933,204.12 |

| No. 2. | Percentage of Total Assets Transferred | Percentage of Value of Total Stock Received | Difference between Percentages in Columns 1 and 2 | Percentage of Profit or Loss | Profit | Loss |
|---|---|---|---|---|---|---|
| Consolidated Carbon Co. | 10.98 | 11.17 | + .19 | + 1.65 | $ 17,991.64 | |
| Standard Carbon Co. | 13.79 | 12.53 | —1.26 | — 9.10 | | $124,655.82 |
| United Oil & Natural Gas Products Corp. | 12.50 | 12.32 | — .18 | — 1.42 | | 17,590.67 |
| Central Carbon Co. | 7.22 | 8.01 | + .79 | +11.00 | 78,859.75 | |
| Pelican Carbon Co. | 4.78 | 3.42 | —1.36 | —28.41 | | 134,800.16 |
| Louisiana Gas Products Corp. | 3.97 | 4.07 | + .10 | + 2.48 | 9,764.45 | |
| Liberty Carbon Co. | 2.58 | 3.15 | + .57 | +21.93 | 56,205.25 | |
| Louisiana Carbon Co. | 3.73 | 3.81 | + .08 | + 2.14 | 7,937.71 | |
| Green River Carbon Co. | .55 | .52 | — .03 | — 5.21 | | 2,849.38 |
| Cosmos Carbon Co. | 19.50 | 18.78 | — .72 | — 3.68 | | 71,332.46 |
| Cumberland Carbon Co. | .52— | .52+ | + .003 | + .67 | 348.19 | |
| Natural Gas Products Corp. | 5.33 | 5.53 | + .20 | + 3.72 | 19,675.73 | |
| Humphreys Carbon Co. | 11.17 | 12.53 | +1.36 | +12.17 | 135,090.95 | |
| Tampico Gas Co. | 3.38 | 3.64 | + .26 | + 7.55 | 25,354.82 | |
| | 100.00 | 100.00 | | | $351,228.49 | $351,228.49 |

**46**

In its income tax return for the period beginning with its organization and ending December 31, 1925, the taxpayer took depreciation and depletion deductions on the basis of the fair market value of the property at the time of its acquisition; but the Commissioner of Internal Revenue held that the basis for the calculation should be the cost of these assets to the transferors and determined a deficiency in income taxes in the amount of $7,132.57. The Board of Tax Appeals sustained the position of the Commissioner and the only issue brought here for review is whether the acquisition by the taxpayer of assets in exchange for shares of its stock was a transaction within the provisions of section 203 (b) (4) of the Revenue Act of 1926. The taxpayer does not dispute the correctness of the decision if the facts disclosed constitute such a transaction.

■ It is manifest that the transaction involved a transfer by several persons to a corporation of property in exchange for stock of the corporation, and that immediately after the exchange, the same persons were in control of the corporation. The only doubt relates to the existence of the condition essential to the application of the section, that the amount of stock received by each person was "substantially in proportion to his interest in the property prior to the exchange." The Commissioner's contention is that this clause requires a comparison between the proportionate share of each transferor in the total assets before the exchange and his proportionate share in the total issue of stock after the exchange. The taxpayer's contention, on the other hand, is that the comparison lies between the value of the share of each transferor in the total assets before the exchange and the value of its shares of stock or interest in the corporation after the exchange. The former interpretation looks at the transaction from the standpoint of the corporation as a taxpayer and the latter from the standpoint of the transferors as taxpayers under the taxing statute.

The language of the concluding clause of the section is vague, and, taken by itself, is perhaps susceptible to either interpretation. On behalf of the Commissioner, it may be said that the effect of the statute upon the income tax of the corporation was in the mind of Congress because of the express provision of section 204 (a) (8) that when a transaction described in sec-

tion 203 (b) (4) is involved in the acquisition of property after December 31, 1920, by a corporation in exchange for its stock, the basis for determining gain or loss (and consequently depreciation and depletion allowances) shall be the same as it would be in the hands of the transferor; and because of the condition in section 203 (b) (4) that the transferors shall be in control of the corporation immediately after the exchange. So far as corporate control is concerned, small differences in the percentages of control exercised by the several transferors as compared with the percentage of their prior interest in the property conveyed are of little moment, and when, as in the pending case, the greatest differences in the case of any transferor is 1.36 per cent. and the difference in only two out of fourteen cases exceeds 1 per cent., it is obvious that the element of control specified by the statute is met. Moreover, it is said to be literally true that the stock received by each transferor was, in the language of the section, "substantially in proportion to his interest in the property prior to the exchange," because the share in the new corporate enterprise which he received approximated the share of the whole property which he originally owned.

■ Realizing that these observations are not without force, we are nevertheless of the opinion that the alternate view is the more reasonable construction of section 203 (b) (4). It was designed primarily to affect the income tax liability of the transferors and to except them in the given circumstances from the operation of the general rule that the gain or loss from the sale or other disposition of property acquired after February 28, 1913, should be calculated in relation to its cost. This is clear, because the section speaks of the recognition of gain or loss upon the transfer of property by two or more persons to a corporation, and obviously refers to the gain or loss of these persons and not the gain or loss of the corporation. It is manifest from a practical viewpoint that when an owner of property transfers it to a corporation in exchange for stock and thereafter his interest in the corporation is of a value substantially equivalent to the value of the property transferred, he has realized no gain or loss; and hence Congress declared that in computing his income for purposes of taxation, no gain or loss from such a transaction should be recognized. But, on the other hand, if the asset

possessed by the transferor after the exchange differs substantially in value from that which he previously possessed, a real change in his condition, for better or worse, has taken place; hence Congress provided that in such a case the exception to the general rule should not apply and the gain or loss involved in the exchange should be recognized. The emphasis upon the individual transferor is noted in the provision that the paragraph shall apply only if the condition of substantial equivalency is met in the case of each transferor, so that no matter how many persons are involved, unless the transfer by each complies with the condition, none is privileged to avail himself of the exception. Nor may the transferee corporation do so in fixing the basis for the calculation of depreciation and depletion allowances, because the conditions necessary for the application of the exception are the same for the transferee as for the transferors.

If, in accordance with this view, the tables above set out are examined, it will be seen that in a number of instances there was a substantial difference between the value of the asset possessed by the transferor before the exchange and the value of the stock received by him therein. Thus it appears that the Liberty Carbon Company received a gain of 21.93 per cent. or $56,205.25, the Humphreys Carbon Company a gain of 12.17 per cent. or $135,090.95, and the Central Carbon Company a gain of 11 per cent. or $78,859.75; and on the other hand, that the Standard Carbon Company suffered a loss of 9.10 per cent. or $124,655.82, and the Pelican Carbon Company a loss of 28.41 per cent. or $134,800.16. It cannot be said of any of these exchanges that the condition of the transferor was substantially the same after as before the exchange, and hence it appears that the condition of the statute was not met.

Our construction of the statute seems to be in accord with that of the Circuit Court of Appeals of the Fifth Circuit in Snead v. Jackson Securities & Investment Co., 77 F.(2d) 19 where the question was raised whether section 112 (b) (5) of the Revenue Act of 1928 (26 U.S.C.A. § 112 and note), which is the same as section 203 (b) (4) of the Revenue Act of 1926, applies to the transfers of property to a corporation by several persons who were not tenants in common of the property exchanged, and whether the section requires that after the exchange the transferors shall have the same proportionate interest in the precise property transferred by them respectively as they had before the exchange. The court said: (at page 21 of 77 F.(2d) "It is immaterial to the transferee whether the property transferred was owned jointly or separately. In either event the corporation receives the whole in full legal ownership and it becomes merged with its other assets. In no event could the transferor retain any distributable interest in the specific property transferred. His equitable ownership is in all the assets of the corporation, in common with other stockholders and in proportion to the number of shares he holds. If he receives stock of the corporation giving him an equitable interest in all its assets, substantially of the same value as his interest in the property transferred, he has neither lost nor gained by the transaction, and the provisions of the statute apply, if its other requirements are complied with. On the other hand, if he receives stock of more value, the exchange is equivalent to a sale from which profit is derived. Clearly, it was to prevent a transferor thereby escaping taxation that the provision was inserted in the section. If Congress had intended to make a distinction between property separately owned and jointly owned, it would have been very easy to say so. The contention of appellee is without merit." See, also, Hillyer, Edwards Fuller, Inc. v. United States (D.C.) 52 F.(2d) 742.

The decision of the Board of Tax Appeals is reversed.