**LOUIS W. GUNBY, Inc., v. HELVERING, Commissioner of Internal Revenue.**

**No. 7742.**

United States Court of Appeals for the District of Columbia.

Argued May 15, 1941.

Decided June 16, 1941.

---

204

William Stanley, J. Edward Burroughs, and William P. Arnold, all of Washington, D.C., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Newton K. Fox, J. P. Wenchel, and Irving M. Tullar, all of Washington, D. C., for respondent.

Before GRONER, Chief Justice and EDGERTON, and RUTLEDGE, Associate Justices.

GRONER, C. J.

Section 112, Revenue Act of 1934, provides that: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; * * *."[1]

And Section 113 provides, in circumstances covered by Section 112, that the basis for determining gain or loss—"shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."[2]

The single question on this appeal is whether, in the circumstances presently to be mentioned, Sections 112 and 113 are applicable.

The facts are these: Louis W. Gunby, a resident of Salisbury, Maryland, is the president, treasurer, director, and holder of practically all of the stock of petitioner, Louis W. Gunby, Inc. In May, 1935, when he was more than 85 years of age, to simplify "the equalizing of gifts to his five children", he caused petitioner corporation to be organized under the laws of Maryland, with authority to issue 4,500 shares of preferred stock of $100 per share and 25 shares of common stock of $1 per share. Both classes of stock carried voting privileges, and Gunby subscribed to all the shares of preferred stock and his five children to five shares each of common stock. At the corporate meeting, Gunby offered to sell to the corporation certain securities owned by him of the then net market value of $440,827.86, for that amount of money and, the offer being accepted, he delivered the securities to the corporation and gave it his check for $450,000 in payment of the preferred stock and received from the corporation its check for $440,827.86 in payment of his securities. The checks were simultaneously deposited. Mr. Gunby's bank account prior to the entries occasioned by the checks was $17,000.10, and the corporation's account was $3,861.08. The two checks were entered on the two accounts at the same time, canceling each other except to the extent of $9,172.14 by which the corporation's account was increased. The reason for the payment of $9,172.14 over and above the value of the securities was to make the amount of the preferred stock to be issued the even figure of $450,000. Subsequently and in the years 1935 and 1936 the corporation sold approximately $100,000 of the securities acquired from Gunby and reported its gain for income tax purposes on the basis of the cost to him. The Commissioner corrected the return so as to make the basis the value on

[1] 26 U.S.C.A. Int.Rev.Code, § 112.

[2] 26 U.S.C.A. Int.Rev.Code, § 113.

the day of transfer to the corporation, thereby increasing the tax a little more than $2,000, which is the amount involved in the present controversy.

On appeal to the Board of Tax Appeals, the majority sustained the Commissioner's determination. The Board referred to a statute of Maryland which requires that, where capital stock is issued for property rather than for money, the corporation must list the individual items of property (in this case the securities), together with an appraisal and description thereof, and certify the same with the state tax commission, for filing in the clerk's office of the Superior Court of the county in which the corporation is domiciled. Presumably the purpose is to furnish information to a prospective investor in the shares of the corporation of the value of the assets supporting its stock. The majority of the Board were of opinion that, since Gunby had not complied with this statutory requirement but had adopted a form of corporate organization in which it appeared that the shares were sold for money, it did not thereafter lie in his mouth to claim, in the matter of federal taxation, that in reality the shares were issued in exchange for securities. They, therefore, concluded that, having made his bed, he must lie in it. Five members of the Board dissented on the ground that clearly the substance of the transaction was an exchange within the meaning of Section 112 and that, notwithstanding Gunby gave the transaction the semblance of a sale, the circumstances indisputably showed that it was nothing more than an exchange of stock for property. Hence they thought that, if there had been a failure to conform to the Maryland law, that was a matter for state action, and the Board's function was to decide whether there had been an exchange within the meaning of the federal revenue laws. On this subject, the spokesman for the minority said—If the Commissioner were contending in this case that the transaction was an exchange, and not a sale, I believe the form would be disregarded and the substance adopted.—And this statement, we think, is correct in the light of the decisions of the Board and of the courts, under like or nearly like circumstances, over a long period of years.

Enough has been said to show that upon the completion of the transaction the corporation owned Gunby's securities and Gunby owned practically all of the corporation's stock, and also that Gunby immediately after the exchange was in control of the corporation as defined in Section 112(h) of the applicable Act. In this view, it is obvious that the transaction was not in actual fact a purchase of the shares of stock for cash, because the exchange of checks was merely a "wash" transaction in which one check offset the other. This being true, we think it may be fairly said that, if the actual value of the securities on the day of transfer had been in excess of their cost to Gunby, the Commissioner would upon their sale by the corporation have insisted, as has usually been the case, that the basis for taxation was the cost to Gunby, and that such a contention by the Commissioner would have prevailed on the very theory that the corporation now insists upon, namely, that the substance rather than the shadow should always be the test for taxation purposes. All of this we say in view of the frequency with which the question has arisen in the past and as a result of which it is now a fixed and established rule. Or, stated in the language of the Supreme Court: "Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants; and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form".[3]

This court has applied the rule in a number of cases, notably in Labrot v. Burnet, Commissioner, 61 App.D.C. 47, 57 F.2d 413. In that case a husband and wife had acquired a farm as partners. Subsequently they organized a corporation controlled by themselves to which they sold the farm for money at a loss. The Commissioner there insisted that the sale was an exchange under the provisions of a revenue act identical with the one under consideration. The Board sustained the Commissioner, and we sustained the Board, holding that in transactions of that nature substance and not form determines the applicability of the taxing act. And see United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180, and Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, to the same effect.

---

[3] Weiss v. Stearn, Commissioner, 265 U.S. 242, 254, 44 S.Ct. 490, 492, 68 L.Ed. 1001, 33 A.L.R. 520.

The most recent recognition of the rule among the Circuits is in Snowden v. Mc-Cabe, 6 Cir., 111 F.2d 743. That was a case in which some 26 different persons owned an "outing club". The club owned a considerable acreage of land which it cultivated for market. It owed a bank $70,000, and the bank called its loan. In order to pay off the loan, a new corporation was formed and the property of the club conveyed to the new corporation, the consideration being the assumption of the debt to the bank and "other good and valuable consideration". Sufficient shares of stock were sold to produce money enough to pay the debt to the bank. The "club" went out of existence, and the old stock was declared worthless and a loss claimed thereon. The Commissioner declined to allow the loss and insisted that the transaction constituted a transfer of assets of the old corporation to the new in exchange for stock in the new corporation, and this position was sustained, the Sixth Circuit Court of Appeals saying that the taxpayer's argument would be persuasive if the transaction were looked at simply in relation to its form, but that the rule was that taxation must be determined by viewing what is actually accomplished rather than what is declared to be the purpose, and that taxation, being a practical matter, the substance and not the form must govern, citing Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309, 311; First Seattle D. H. Nat. Bank v. Commissioner, 9 Cir., 77 F.2d 45; Helvering v. Security Savings & Commercial Bank, 4 Cir., 72 F.2d 874, 876. In the last-named case, a bank purchased the capital stock of another bank and absorbed the purchased bank. Subsequently it charged to profit and loss the sum of $31,580 claimed to have been sustained through the purchase and liquidation of the shares of the purchased bank and claimed a deductible loss on account thereof. The Commissioner disallowed the loss, and the Fourth Circuit sustained his determination, saying: "The series of acts corporate and otherwise leading up to the purchase of the stock and of the business of the Central Savings Bank constituted only a single transaction in which the Bank purchased certain assets tangible and intangible for the price paid for the stock. The whole transaction constituted the means with which to carry out the plan and in the application of income tax laws the substance and not the form should control."

Another case, in our opinion directly in point, is Kuldell v. Commissioner of Internal Revenue, 5 Cir., 97 F.2d 725. There the owners of securities which had cost in excess of $500,000, to facilitate keeping books, organized a corporation with capital stock of 100 shares, all of which except one share were purchased by the owners. The securities were sold on the stock exchange and repurchased at the same price for the corporation, which paid for them with money derived from their previous sale. The owners claimed a loss because the securities had sold at a price lower than they had originally purchased them for. The Commissioner, the Board, and the court held that the transaction was an exchange of securities and not a sale and refused to allow the loss.

█ If Gunby's purpose in giving the particular form he did to this transaction had been to avoid income taxes,—in other words, if his purpose had been to defraud the revenue, or if he had claimed in his own behalf a loss on the securities turned over to the corporation,—we might be justified in viewing the situation in a different light, but nothing of that kind is suggested, and we think, in the circumstances, the fact that he did not comply with the Maryland law should not control the decision we have to make. That law is an act regulating corporations. It is not a revenue act. Hence it follows that the form of the transaction had no relation to taxation in Maryland and certainly, if we are consistent, no relation to federal taxation.

We are of opinion, therefore, that the Board erred in placing its decision in this respect upon what it deemed to be the violation of the Maryland law. Our view in this respect is sustained in Howard v. Commissioner of Internal Revenue, 6 Cir.; 56 F.2d 781, and in Thurber v. Commissioner of Internal Revenue, 1 Cir., 84 F.2d 815, and likewise by the Board in Bilicke's case, Bilicke v. Com'r, 20 B.T.A. 784. We think the true rule is that the transaction is to be determined within the provisions of the federal revenue laws and that in the interpretation of those laws substance rather than form is controlling in determining whether a particular transaction is a sale or an exchange.

Reversed and remanded.