LOWRY ET AL., APPELLANTS, v. SUNDAY CREEK COAL CO., APPELLE.

(No. 7400—Decided September 15, 1964.)

*Messrs. Topper & Alloway,* for appellants.
*Messrs. Summer, Hoffman & Bowsher,* for appellee.

*Per Curiam.* Plaintiffs in the trial court, Emma Newton Lowry and Jeanette Newton Herold, and defendant, The Sunday Creek Coal Company, will be referred to as plaintiffs and defendant in this opinion.

Directors of defendant, at a meeting held April 6, 1959, authorized the purchase of the shares in defendant corporation held by Emma Newton Lowry at $15 per share, $2,500 to be paid in cash and the balance in ten promissory notes of equal amount, maturing at intervals of one year over the next ten years. Subsequently, ten promissory notes of the face value of $2,000, bearing interest at the rate of 5%, were issued to the plaintiffs as joint tenants with right of survivorship.

Upon default in the payment of an installment of interest,

the notes being cognovit in form, judgment in the sum of $20,805.56 was taken on the notes April 16, 1960, and levy of execution made in Franklin, Jackson, Perry, and Hocking counties.

Defendant filed a petition seeking to vacate the judgment taken by the plaintiffs. Several allegations are made in defendant's petition to vacate, among which is the claim that the purchase authorized by the board of directors to purchase its own stock "was prohibited by the statutes of Ohio." Following a series of motions and decisions thereon, plaintiffs answered defendant's petition to vacate, admitting basic facts as to corporate capacity, purchase of the stock by the corporation and the judgment taken, and entered a general denial. The trial court held that the judgment was taken on warrant of attorney and without notice to the defendant and that the defendant had a valid defense in the action, and the court therefore suspended the judgment and all liens obtained under it were preserved.

The issues were drawn when the defendant filed its answer and plaintiffs their reply. Only one of the issues made need be discussed to dispose of this appeal. Defendant claims that before and after April 20, 1959, it was unable to pay its obligations as they became due and that the additional burden of the promissory notes issued in the stock purchase transaction "was reasonable ground to believe defendant, if not already insolvent, would be rendered insolvent," making the stock purchase prohibited by the statutes of Ohio.

Trial was had to the court without a jury and judgment was for defendant, the plaintiffs' petition and ten causes of action dismissed, the defendant directed to return 1340 shares of its common stock, and the levies of execution in the four counties vacated. Plaintiffs' motion for a new trial was later overruled. It is from this judgment and final order that this appeal is taken.

Counsel for plaintiffs assign three errors as the basis for the appeal. Consolidated, they are that the trial court's judgment is not sustained by sufficient evidence, is contrary to the manifest weight of the evidence, and contrary to law. The record before the trial court deals entirely with the issue of the solvency of the defendant at the time it issued the promissory

notes in question, or after the time of issue, and plaintiffs urge that the trial court erred in finding "that the company not only was not paying its bills in the usual course of business, but was not able to do so." (Decision filed March 26, 1963.) The court held the purchase of the shares from the one of the plaintiffs was in violation of statutory provisions and an ultra vires action by the board.

The portions of Section 1701.35, Revised Code, necessary for our consideration of this matter are as follows:

"(A) A corporation by its directors may purchase shares of any class issued by it, in any of the following instances:

"(1) When the articles authorize the redemption of such shares and do not prohibit such purchase;

"* * *

"(4) For offering and sale, or the grant of options with respect thereto, to any or all of the employees of the corporation or of subsidiary corporations or to a trustee on their behalf, under any plan adopted or to be adopted by the directors for that purpose;

"* * *

"(9) When authorized by the articles, or by the shareholders at a meeting called for such purpose, by the affirmative vote of the holders of two-thirds of the shares of each class, regardless of limitations or restrictions in the articles on the voting rights of the shares of any such class, or, if the articles so provide or permit, a greater or lesser proportion, but not less than a majority, of the shares of any class.

"(B) A corporation shall not purchase its own shares except as provided in this section, nor shall a corporation purchase or redeem its own shares if immediately thereafter its assets would be less than its liabilities plus stated capital, or if the corporation is insolvent, or if there is reasonable ground to believe that by such purchase or redemption it would be rendered insolvent."

According to the minutes of the board of directors April 6, 1959, the shares authorized to be purchased from the plaintiff, Emma Newton Lowry, were to be offered for sale to the officers and employees of the company at $12.75 per share, "under the company's stock purchase plan."

A careful scrutiny of the record of the trial, including the

exhibits, fails to disclose the details of any plan "adopted or to be adopted by the directors for that purpose." The clear implication of the provisions of Section 1701.35 (A) (4), Revised Code, is that there must be a "plan," or policy, covering sales of stock to employees by any corporation. A sudden determination to buy the stock of some shareholder, or shareholders, and resell it at a given price bears no semblance to a "plan." So far as the transaction before us appears, it is not supported by a plan, and lacking such evidence the trial court had every right to conclude that it was done on impulse or that resort to it was a scheme or a maneuver.

If the plan was existing it should be made plain in the evidence. If the plan was prospective that should appear with equal clarity. If there is no plan, nor one projected, then the corporation is bound to follow the provisions of subsection (9), and if no provision for the purchase of its own shares is contained in its "articles," then authorization must be by vote of the shareholders according to the statute. It is only by strict adherence to the provisions of the law that the rights of shareholders can be protected from what may be an ill-advised or irresponsible act on the part of its board of directors in changing the shareholder list or share structure of the corporation. Nothing in evidence indicates authorization by the articles of the defendant or by an action of its shareholders.

The trial court found the stock transaction to be in violation of the statute, basing its conclusion on the terms of Section 1701.35 (B), Revised Code. There are three grounds upon which its findings may be predicated: (1) "if immediately thereafter its assets would be less than its liabilities plus stated capital"; (2) "if the corporation is insolvent"; (3) "if there is reasonable ground to believe that by such purchase or redemption it would be rendered insolvent."

We are not aware of the exact grounds upon which the trial court predicated its conclusions. It may have been on one ground or upon all three. In any event, the statute requires of it a judgment as to the company's future. To anticipate requires consideration of the company's present operations. Any conclusion must be reasonable in the light of present operating facts to be valid. A careful examination of the record and exhibits shows facts sufficient to support its findings. The com-

pany borrowed on a long-term real estate mortgage and from the Lomas Trust for working capital purposes. It is true that receivership and bankruptcy were avoided, but it was clear the accounts payable were not met when due.

The company's commercial bank reached the point of refusing credit extensions without the pledge of accounts receivable and company records show persistent overdraft balances, and its officers admitted timing the release of vouchers already drawn to avoid overdrafts at the bank, an admission of the use of check float to provide working capital. Persistent operating losses appear, employees were not paid in full, machinery was sold as junk, other assets were disposed of to obtain operating cash, and the voluminous "Jamison Report" can well be said to be prophetic of doom. The evidence is sufficient to support the conclusion of the trial court.

The assignments of error are not well taken. The judgment of the Court of Common Pleas is affirmed and this appeal is dismissed at appellants' costs.

*Judgment affirmed.*

DUFFY, P. J., DUFFEY and TROOP, JJ., concur.