**Theodore O. WENTWORTH and Shirley M. Wentworth, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 74–1482.

United States Court of Appeals, Sixth Circuit.

Feb. 12, 1975.

---

884

Bart A. Brown, Jr., J. Neal Gardner, Dinsmore, Shohl, Coates & Deupree, Conrad Magrish, Magrish & Magrish, Cincinnati, Ohio, for petitioners-appellants.

Scott P. Crampton, Richard Roberts, Asst. Atty. Gen., Meyer Rothwacks, Gilbert E. Andrews, Jr., Richard Farber, Joseph McManus, Tax Division-Dept. of Justice, Washington, D. C., Meade Whitaker, Chief Counsel, I. R. S., Washington, D. C., for respondent-appellee.

Before MILLER and LIVELY, Circuit Judges, and McALLISTER, Senior Circuit Judge.

LIVELY, Circuit Judge.

This appeal from the Tax Court involves questions of law only. The facts are set forth in the memorandum findings of fact and opinion of the Tax Court reported at 32 T.C.M. 925 (1973). Only those facts necessary to an understanding of this opinion are repeated. The minutes of a closely held corporation (Chemical) disclosed that the directors voted on November 30, 1965 to redeem all of the stock of T. O. Wentworth, a major shareholder (taxpayer). The stock of the shareholder was delivered to the corporation and cancelled. In return for the stock the corporation credited, and wiped out, an indebtedness from the shareholder to the corporation. The full redemption price was satisfied by the corporation's further action of assuming the shareholder's outstanding indebtedness to another related corporation (Vulcan). As of December 31, 1965, the last day of the tax year of both the taxpayer and the two corporations, the corporate records showed that the taxpayer owned no stock in Chemical and was not indebted to it or to Vulcan. On January 12, 1966 Chemical merged into Vulcan and the merger agreement which was filed with the Ohio Secretary of State did not list taxpayer as a stockholder of Chemical.

Sometime in early 1966 newly hired counsel advised taxpayer and Chemical

that the redemption violated a statute which provides that an Ohio corporation may not "purchase or redeem its own shares if immediately thereafter its assets would be less than its liabilities plus stated capital . . .." Ohio Revised Code, § 1701.35(B). This determination was based on a conclusion that Chemical had incurred losses in 1965 on several uncompleted contracts by making expenditures in excess of fixed contract prices. Though Chemical reported its income for tax purposes on a "completed contract" basis, in April 1966 a reserve for losses on uncompleted contracts was set up on the corporation's books as of December 31, 1965. This entry had the effect of reducing the net worth of the corporation drastically. Prior to this entry, the books disclosed a net worth sufficient to permit redemption of taxpayer's stock without violating § 1701.35(B).

The Tax Court Judge held that "[t]he fact that the redemption may have violated state law does not affect its Federal income tax consequences." Having come to this conclusion, he made no finding as to whether Chemical actually violated Ohio law. There is no dispute that a redemption accomplished in the manner described herein would have resulted in a realization of gain for income tax purposes. It is the contention of the taxpayer that the transaction of November 30, 1965 was "void" under Ohio law and a complete nullity. He argues that no actual redemption took place and that the adjustments and entries made in the records and books of Chemical in April 1966 merely corrected the ones made earlier under the mistaken assumption that a redemption had taken place.

▉ On appeal, taxpayer relies principally on cases which hold that state law defines the nature and extent of legal interests where federal tax liability is sought to be imposed. In Morgan v. Commissioner, 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940), the Supreme Court stated, ". . . in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property or income

sought to be reached by the statute." In Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937), the Court held that a decision of a state court was final on the nature and incidences of a trust and denied the Commissioner's claim that the assignor of trust income should be taxed. See also Aquilino v. United States, 363 U.S. 509, 80 S.Ct, 1277, 4 L.Ed.2d 1365 (1960), which dealt with the priority of liens and relied on Morgan v. Commissioner, supra. These cases merely affirm the recognized principle that property rights and interests are usually determined by state law. They do not hold that Congress is precluded from subjecting certain transactions with respect to such property rights and interests to federal taxation. In Morgan, supra, 309 U.S. at 80–81, 60 S.Ct. at 426, the Court further stated:

State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law. (Footnote omitted.)

▉ We believe the present case is controlled by the "claim of right" doctrine set forth in North American Oil v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932), where the Supreme Court held—

If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. 286 U.S. at 424, 52 S.Ct. at 615.

This doctrine has been followed in other cases by both the Supreme Court and this court. See Healy v. Commissioner,

345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953); United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951); Davis v. United States, 226 F.2d 331 (6th Cir. 1955); Haberkorn v. United States, 173 F.2d 587 (6th Cir. 1949). These cases point out that one of the basic features of the federal income tax laws is the requirement of an annual accounting. Where a transaction with taxable consequences is carried out in one year and treated by the parties accordingly, the discovery in a subsequent year that the transaction in fact violated a state law does not alter the tax liability of the year of the event. From November 30, 1965 until sometime in April 1966, all parties to the redemption transaction took the position that taxpayer was no longer a shareholder of Chemical and that neither Chemical nor Vulcan was a creditor of taxpayer. Later discovery that the transaction by which this situation was brought about apparently violated the corporation laws of Ohio did not affect the tax consequences, as they were fixed on December 31, 1965. The Supreme Court stated in Healy v. Commissioner, *supra,* 345 U.S. at 282, 73 S.Ct. at 674, "A mistaken claim is nonetheless a claim . . . ." (Citation omitted.)

Other courts have applied the claim of right doctrine to situations similar to the present case. In United States v. Lesoine, 203 F.2d 123 (9th Cir. 1953), it was held that dividend payments by a close corporation which were determined in a subsequent year to have violated state law were nevertheless taxable to the shareholders in the year of payment. In that case the dividends were repaid and the book entries were "reversed" in the later year, but this action was held ineffective to alter the taxability in the year of receipt. In Osburn California Corporation v. Welch, 39 F.2d 41 (9th Cir.), cert. denied, 282 U.S. 850, 51 S.Ct. 28, 75 L.Ed. 753 (1930), it was stated that the power of Congress to impose an income tax and to define what is income is unaffected by the laws of the various states.

A similar view was expressed in Gunby v. Helvering, 74 App.D.C. 185, 122 F.2d 203, 206 (1941). These are not cases where a corporation could have complied with state law, but did not do so and then relied on a technical violation of state law to escape taxes. See, e. g., Lodi Iron Works, Inc., 29 T.C. 696 (1958). In each of the cited cases, the transaction upon which the tax was based violated a substantive provision of state law, though such violation was not apparent at the time of the transaction.

The liability of closely held corporations and their shareholders for federal taxes should not be made to depend upon their compliance with state laws. In addition to providing formal requirements for doing business in corporate form, state corporation laws are designed to protect minority stockholders and outsiders who deal with or are affected by activities of the corporations subject to such laws; they are not primarily revenue measures. Statutes such as § 1701.35(B) are not self-executing, but are enforced by the courts at the behest of one who suffers injury or a threat of injury by reason of their violation. See, e. g., Lowry v. Sunday Creek Coal Co., 2 Ohio App.2d 260, 207 N.E.2d 678 (1964). In the present case, no steps were taken by the Ohio authorities to set aside the stock redemption of November 30, 1965, or to treat it as a nullity. The Internal Revenue Service was entitled to treat this transaction in the same way that the parties who effected it did, and to insist that Chemical and taxpayer adhere to the requirement of annual accounting. To hold otherwise would be to permit a situation where the taxability of transactions could be made to depend upon a decision by the people directly affected on whether to "reverse" previously completed transactions to secure more favorable tax consequences. An equitable system of taxation cannot permit the possibility of such manipulation.

The judgment of the Tax Court is affirmed.