MATTHEWS, Exr., Appellant,

v.

MORRIS SONS COMPANY, Appellee.

[Cite as *Matthews v. Morris Sons Co.* (1997), 118 Ohio App.3d 345.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16064.

Decided Feb. 21, 1997.

346

James I. Weprin, for appellant.

Jonathan Hollingsworth, for appellee.

---

GRADY, Judge.

This is an appeal from an order specifically enforcing the terms of an agreement between a corporation and one of its shareholders for redemption of the shareholder's stock.

The Morris Sons Company operates funeral homes in the Dayton area. It is an Ohio corporation that was organized in 1915. It is a closely held corporation owned by members of the Morris family.

In 1941, Avanelle Morris owned eight and one-third shares of stock in the Morris Sons Company, which then constituted one-sixth of its stock outstanding. That year she entered into an agreement with the corporation. The pertinent parts of that agreement provide:

"Avanelle Morris has and/or will assign and transfer in blank to the said The Morris Sons Company the certificate and/or certificates of stock representing her interest in the said Company * * *.

" * * *

"In the event of the death of the said Avanelle Morris leaving a child and/or children, it is agreed on the part of the Morris Sons Company to pay to said child and/or children an amount of money equal to one-sixth the value of the capital stock of The Morris Sons Company as the same may be determined on the date of the death of the said Avanelle Morris."

Avanelle Morris did not exercise her right of redemption in the years following 1941. Instead, she acquired additional shares in the corporation. At the time of her death in 1993, she owned ten shares. Those shares then constituted 31.58 percent of the corporation's outstanding stock.

This action was commenced by Warren Matthews, executor of the estate of Avanelle Morris Matthews, who asked the court to determine the rights and duties created by the 1941 agreement and to order the Morris Sons Company to perform its duty by purchasing the required stock for its fair market value.

The case was referred to a magistrate, who found that the ten shares owned by Avanelle Matthews were worth $334,797 at the time of her death, and recommended an order requiring the corporation to purchase the ten shares from her estate for that sum.

The Morris Sons Company filed objections to the magistrate's decision. The trial court modified the magistrate's decision, and ordered:

"The 1941 buy/sell agreement clearly specified that Decedent Matthews was to transfer the certificates of stock representing her interest in the company to Defendant, be it 8⅓ shares or ten (10) shares. The agreement also clearly specified that in return for the transfer of the stock, it would give Decedent Matthews' children a total sum equal to one-sixth the value of the capital stock. Accordingly, Plaintiff is ordered to transfer Decedent's ten (10) shares of stock to Defendant Morris Sons Company. Defendant Morris Sons is ordered to pay one hundred seventy six thousand six hundred ninety two dollars and twenty five cents ($176,692.25), or one-sixth of the value of the capital stock, in exchange for the shares."

Matthews filed a timely notice of appeal and now presents two assignments of error. Although not directly stated in his brief, Matthews's first assignment of error may be summarized as follows:

"The trial court erred in not requiring the corporation to pay the fair market value of $334,697 in exchange for Matthews' 31.58 per cent ownership interest in the corporation."

Matthews's second assignment of error states:

"The trial court erred when it found that plaintiff was required to transfer all of her ten (10) shares of stock in defendant, Morris, representing her entire

31.58% interest, but that Morris was only obligated to pay for such shares an amount equal to a one-sixth (⅙th) interest ($176,692.25)."

The two assignments of error are interrelated and, accordingly, we will consider them together.

■ Acquisition by an Ohio corporation of its own shares must be strictly in accordance with the provisions of R.C. 1701.35. *Lowry v. Sunday Creek Coal Co.* (1964), 2 Ohio App.2d 260, 31 O.O.2d 378, 207 N.E.2d 678. R.C. 1701.35(A)(5) permits a corporation to purchase its own shares "from a person who has purchased such shares from the corporation under an agreement reserving to the corporation the right to repurchase or obligating it to repurchase." This provision also reasonably applies to repurchase agreements made subsequent to the issuance of shares. Such agreements may provide for the redemption price of the shares concerned. However, the price paid by the corporation for them is subject to R.C. 1701.31(A), which provides:

"Whenever an outstanding redeemable share is redeemed by the corporation, or an outstanding share is purchased or otherwise acquired by the issuing corporation (otherwise than upon conversion, change, or exchange), the stated capital, if any, of the class to which such redeemed, purchased, or acquired share belongs shall thereby be reduced by an amount equal to the stated capital, if any, of such share[.]"

Therefore, unless the stated capital of the entire class of stock is reduced or eliminated pursuant to R.C. 1701.31(E), the price paid for the shares redeemed should be the amount of the stated capital of the corporation that the ownership interest of the redeemed shares represents.

■ The 1941 agreement limits the price the corporation is required to pay Avanelle Matthews's children to a sum equal to one-sixth of the stated capital of the corporation. At the time of her death, that was $176,692.25. The trial court correctly rejected that part of the magistrate's proposed order which would have required the corporation to pay a greater amount. Therefore, the issue remaining for determination was: How many of Avanelle Matthews's shares is her estate required by the 1941 agreement to transfer to the corporation in exchange for a payment in the amount of $176,692.25?

■ "Where the parties following negotiation make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. "If a contract is clear and unambiguous, the court need not concern itself with rules of construction or go beyond the plain language of the agreement to determine the rights and

obligations of the parties. * * * Instead, the court must give effect to the language of the contract. * * * " *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 4, 553 N.E.2d 1371, 1375. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, syllabus.

A contract is ambiguous if the rights and duties it imposes on the parties to it are reasonably subject to conflicting interpretations. Reading the foregoing provisions of the 1941 agreement together, no ambiguity is presented, though the language employed could have been more precise.

The 1941 agreement imposed a duty on Avanelle Matthews's children that could be only performed prospectively, that is, after Avanelle Matthews's death. However, the duty they are then required to perform must be identified by the terms of the agreement when it was made.

When the 1941 agreement was made, Avanelle Matthews owned one-sixth of the corporation's outstanding stock, which was worth one-sixth of the capital value of the corporation. The agreement gave her a right to redeem that stock, and it imposed on the corporation a duty to pay her an amount equal to the share of the corporation's capital value that the stock was worth at its redemption.

The agreement extends the same right to Avanelle Matthews's children, and it imposes the same duty on the corporation when that right is exercised by them. By pegging the price the corporation must pay to the value of the stock on the date of Avanelle Matthews's death, the agreement merely identifies the point in time at which the value of the stock is determined. That provision lends certainty to the terms of the agreement. It does not thereby require or entitle Avanelle Matthews's children to redeem any stock interests that their mother acquired after the 1941 agreement was made, and it does not require or entitle the corporation to redeem stock representing those additional interests.

The additional interests and the stock representing them that Avanelle Matthews acquired are not a part of the agreement and they create no ambiguity in its terms. Therefore, the corporation is entitled to receive stock from Warren Matthews equivalent to one-sixth of the corporation's capital value, and in exchange it is required to pay him $176,692.25, which has been determined to be the value of that stock on the date of Avanelle Matthews's death.

The trial court erred when it held that Avanelle Matthews's acquisitions after she entered the agreement imposed duties on her children different from those she assumed when she made the agreement. That holding would likewise require the corporation to pay the same amount for any interest Avanelle Matthews owed at the time of her death, even if she then owned stock worth a

mere one-percent interest. Impossibility might then prevent enforcement of the contract price, but we see no reason in the agreement to find that the parties intended its terms to cut the other way, to the detriment of Avanelle Matthews's children, particularly in view of the sections of the Revised Code governing redemption of shares that were discussed above.

We acknowledge that an order that limits the transfer required to less than the full ten shares owned by Avanelle Matthews's estate leaves some of those shares in limbo, at least with respect to the relief sought. However, the unavailability of that relief does not permit us to read into this agreement rights or duties not created by it. Any undue prejudice that Avanelle Matthews's children suffer as a result of their status as minority shareholders may be made the subject of another action. See *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217.

The Morris Sons Company argues that it should be relieved of its obligations under the agreement because Avanelle Morris Matthews failed to comply with certain provisions in the 1941 agreement. Alternatively, it argues that it is entitled to a setoff of $109,000 against the purchase price of her stock because of payments made to her between 1941 and 1993.

A party who intends to defend a judgment yet asks to change its terms must file a notice of cross-appeal. App.R. 3(C)(1). The Morris Sons Company filed no notice of cross-appeal. We may then consider the error it has assigned only to prevent reversal of the trial court's judgment. R.C. 2505.22; *Duracote Corp. v. Goodyear Tire & Rubber Co.* (1983), 2 Ohio St.3d 160, 2 OBR 704, 443 N.E.2d 184. The error cannot perform that function if the assignments are sustained. Therefore, we lack jurisdiction to determine them. *Id.*

Appellant's first assignment of error is overruled. Appellant's second assignment of error is overruled with respect to the sum that appellee is required to pay, but is sustained with respect to the shares of stock that appellant must transfer in exchange. Pursuant to App.R. 12(B), the order of the trial court is affirmed, but modified to require appellant to transfer shares of stock worth $176,692.25, and no more. The cause will be remanded to the trial court, which is ordered to determine the numerical shares or part-shares of stock in the Morris Sons Company that appellant must transfer to satisfy the order as modified, and to order any further relief necessary to accomplish that result.

*Judgment accordingly.*

BROGAN and WOLFF, JJ., concur.