[Cite as *Esrati v. Dayton City Comm.*, 2019-Ohio-1021.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DAVID ESRATI | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28062 |
| | : | |
| v. | : | Trial Court Case No. 2018-CV-593 |
| | : | |
| DAYTON CITY COMMISSION, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of March, 2019.

. . . . . . . . . .

DAVID ESRATI, 113 Bonner Street, Dayton, Ohio 45410
 Plaintiff-Appellant, Pro Se

JOHN C. MUSTO, Atty. Reg. No. 0071512, 101 West Third Street, Dayton, Ohio 45402
 Attorney for Defendants-Appellees, Dayton City Commission and Jeffrey Mims, Jr.

BRIAN L. WILDERMUTH, Atty. Reg. No. 0066303 and ZACHARY J. CLOUTIER, Atty.
Reg. No. 0097160, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
 Attorneys for Defendants-Appellees, Dayton Board of Education and Mohamed Al
 Hamdani

. . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Plaintiff-Appellant, David Esrati, appeals pro se from a trial court judgment dismissing his action against Defendants-Appellees, Dayton City Commission ("DCC"), Jeffrey Mims, Jr., Dayton Board of Education ("Board"), and Mohamed Al Hamdani (collectively, "Appellees"). In a single assignment of error, Esrati contends that the trial court erred in granting summary judgment in Appellees' favor and in dismissing his action.

**{¶ 2}** We conclude that the trial court did not err in rendering summary judgment in favor of Appellees. Esrati failed to provide evidence that a school facilities task force, which was formed to gather financial information and assist the Board in making financial decisions, engaged in deliberations as opposed to information gathering when it participated in a private tour of a school. As a result, the alleged lack of an open meeting did not invalidate a resolution, rule, or formal action of the Board under R.C. 121.22(H). Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

**{¶ 3}** In November 2016, the Board ordered a reduction in staff members due to declining enrollment in the Dayton Public Schools ("DPS"). Over a year later, in December 2017, the Board directed Dr. Elizabeth Lolli to study school facilities and provide a recommendation. At the time, DPS owned 24 vacant properties and four vacant buildings. DPS also had nine buildings that were below 50 percent capacity. Lolli had been appointed acting DPS superintendent in late November 2017.

**{¶ 4}** Lolli initially planned to meet with parents in each quadrant of the city and

discuss the issues. However, shortly after being appointed, Lolli became aware of a fractured relationship between DPS leaders and Dayton city officials (the mayor and city commissioners). As a result, Lolli met with Dayton Mayor Nan Whaley. After that meeting, Lolli met with Whaley, Shelley Dickstein (Dayton City Manager), Jeffrey Mims, (Dayton City Commissioner), and Mohamed Al-Hamdani, who had been elected to the Board, but had not yet taken office. At the meeting, they discussed forming a task force of business owners. This would let them gather information to help the Board and DPS make financial decisions. DPS wanted to obtain the viewpoint of persons who had a vested interest in DPS but were not directly connected to the school system. The mayor helped select the majority of task force members, with help from commissioners and Board members. As ultimately formed, the task force included three of the seven Board members (Dr. William Harris, Jr., Dr. Robert Walker, and Al-Hamdani).

{¶ 5} After assuring the Board agreed with the plan, the City of Dayton and DPS held a joint press conference and set several meeting dates. The initial meeting of the School Facilities Task Force ("Task Force") was scheduled for January 9, 2018. Members of the media, as well as Esrati, who had appeared for the meeting, were told that it would be held in private. According to Lolli, the intention in holding private meetings was to let the business people be honest and open. Lolli stated that they "also decided that it likely would be, if the press was there, some comment could be taken out of context and potentially be used in a manner that would not benefit those businesses that were represented or the people, the groups, that were represented." Transcript of March 15, 2018 Preliminary Injunction Hearing ("Tr."), p. 85.

{¶ 6} After Esrati objected to the lack of public access, the January 9, 2018

meeting did not go forward. The next meeting was scheduled for January 24, 2018, and was open to the public. Esrati and others attended this public meeting. A private bus tour of three schools, including Valerie Elementary School, was then set for February 6, 2018. On February 5, 2018, Esrati filed a motion for an injunction, alleging that the Appellees had violated R.C. 121.22, which generally requires that public officials conduct deliberations on official business in open meetings. Esrati asked the court to order various relief, including that the Task Force be ordered to hold its meetings and the bus tour in public.

{¶ 7} The following morning, Esrati filed a motion for a temporary restraining order ("TRO"), asking the court to prevent the Task Force from touring school buildings in private. However, the motion was not scheduled to be heard until February 7, 2018. In the meantime, the Task Force began its tour on the morning of February 6, 2018, with the intention of visiting three schools. About 20 Task Force members were on the bus, as well as a few school employees and three or four members of the media who were not allowed to record the proceedings. While the bus had room for more people, Esrati was not allowed to come, nor was he allowed to tour the first school (Valerie Elementary), where the tour began. There was also no process by which members of the public could ask to attend the school tour.

{¶ 8} Al-Hamdani boarded the bus to go on the bus tour, but asked to exit before the bus arrived at Valerie Elementary. Al-Hamdani had learned that Esrati had just filed for an injunction, and he wanted to confer with attorneys. Esrati followed the bus, and when it arrived at Valerie Elementary, Esrati filmed the Task Force members, including Lolli, entering the building. Esrati protested, claiming several times that this was an

"illegal secret meeting." At the end of the Valerie Elementary tour, Lolli learned that the trial judge had asked for the bus tour to be stopped. As a result, the rest of the stops were cancelled.

{¶ 9} On February 9, 2018, the trial court concluded that the motion for a TRO was moot because the Defendants-Appellees had said they were no longer going to tour Dayton schools. After the parties filed memoranda concerning the interplay between Civ.R. 65 and R.C. 121.22, the court scheduled an evidentiary hearing for March 15, 2018. The court limited the hearing to two issues: "(1) whether the Dayton School Facilities Task Force was a public body as set forth in R.C. 121.22(B)(1)(a)(b); and if so, (2) whether it violated the Open Meetings Act." Doc. #44, p. 1.

{¶ 10} At the hearing, the court heard testimony from Esrati and Dr. Lolli, and also admitted some documents into evidence. A few days later, the court filed a decision denying the motion for a preliminary injunction. The court agreed with Esrati and found "as a matter of law that the Task Force consisting of three Board members and others suggested by the Mayor of Dayton [was] a Committee or Sub-Committee of the decision-making body, the Board of Education" and met the definition of a "public body" under the Open Meetings law. Doc. #52, p. 4.

{¶ 11} However, the court also concluded that Esrati had failed to prove that the Board violated the Open Meetings law during the bus tour. This conclusion was based on the fact that Esrati failed to offer any evidence that the Task Force had deliberated or discussed the closure issues during the bus tour. *Id.* at p. 5.

{¶ 12} Subsequently, the court scheduled a trial for August 2018 and also set a deadline of June 1, 2018, for filing summary judgment motions. All Defendants-

Appellees filed motions for summary judgment, but Esrati did not submit any additional evidence, even though he was given an opportunity to do so. Consequently, the trial court entered summary judgment in favor of Appellees and dismissed the action. This appeal followed.

## II. Was Summary Judgment Proper?

{¶ 13} Esrati's single assignment of error states that:

The Trial Court Erred in Granting Motions for Summary Judgment and Dismissing the Plaintiff's Action.

{¶ 14} According to Esrati, the trial court erred because it required him to prove that deliberations occurred during a meeting that was closed to the public. Esrati contends that this defies logic because individuals excluded from meetings have no ability to know what happened, i.e., to know whether discussions or deliberations occurred.

{¶ 15} Esrati's action was brought under R.C. 121.22, which provides that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). A party bringing an action for violation of the Open Meetings Act has the burden to establish the violation. *Steingass Mechanical Contracting, Inc. v. Warrensville Hts. Bd. of Edn.*, 151 Ohio App.3d 321, 2003-Ohio-28, 784 N.E.2d 118, ¶ 30, citing R.C. 121.22(I). The burden of proof is by a preponderance of evidence. *Id.*

{¶ 16} The issues in the trial court were whether the Task Force was a public body and, if so, whether the Task Force engaged in deliberations during the bus tour that invalided any resolution, rule, or formal action that resulted from the deliberations. As noted, the trial court concluded that the Task Force was a public body, but found a lack

of evidence that the members of the Task Force had engaged in deliberations during the bus tour.   The court, therefore, granted summary judgment to Appellees.

{¶ 17} "A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor."   *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court."   (Citations omitted.)   *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 18} Before addressing the issue of Esrati's failure of proof, we note that the Board has posed an argument about whether the Task Force was a public body. According to the Board, this is an "additional" reason for affirming the summary judgment decision, because the trial court was incorrect in finding that the Task Force was a public body.   However, the Board did not file a notice of cross-appeal on this point, as required by App.R. 3(C)(1), and we should not resolve the issue.   *See, e.g., Matthews v. Morris Sons Co.*, 118 Ohio App.3d 345, 350, 692 N.E.2d 1055 (2d Dist.1997) ("[a] party who intends to defend a judgment yet asks to change its terms must file a notice of cross-appeal").   Because we are affirming the trial court's judgment, and the Board did not file a notice of cross-appeal seeking to change that judgment, the Board's argument is not one we will address.   We will assume, for purposes of argument only, that the Task Force

was a public body.

{¶ 19} R.C. 121.22(H) provides, in pertinent part, that:

A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body. A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) or (J) of this section and conducted at an executive session held in compliance with this section.

{¶ 20} Consequently, the issue is whether the Task Force engaged in deliberations during the bus tour that would make any rule, resolution, or formal act of the Board resulting from the bus tour invalid under R.C. 121.22(H). As noted, the trial court denied the motion for preliminary injunction because Esrati failed to present evidence that deliberations occurred. The court applied the same reasoning in its summary judgment decision, noting that Esrati did not present any further evidence in opposing summary judgment. Doc. # 83, p. 1.

{¶ 21} Admittedly, Dr. Lolli ultimately presented a proposal to the Board, recommending that Valerie Elementary be closed, and the Board acted on the recommendation. However, that does not mean that the Board's action resulted from "deliberations" during the tour.

{¶ 22} The Open Meetings Act does not define "deliberations," but they "involve more than information-gathering, investigation, or fact-finding." *Springfield Local School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emp., Local 530*, 106 Ohio App.3d 855, 864, 667 N.E.2d 458 (9th Dist.1995), citing *Holeski v. Lawrence*, 85 Ohio App.3d 824,

829, 621 N.E.2d 802 (11th Dist.1993). "Deliberations" have been defined as " 'the act of weighing and examining the reasons for and against a choice or measure' or 'a discussion and consideration by a number of persons of the reasons for and against a measure.' " *Id.*, quoting Webster's Third New International Dictionary 596 (1962).

**{¶ 23}** Courts have held that no violation of the Open Meetings Act occurs where a session is for information-gathering and no deliberations take place. *See, e.g., Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 192 Ohio App.3d 566, 2011-Ohio-703, 949 N.E.2d 1032, ¶ 15 (1st Dist.); *Holeski* at 829.

**{¶ 24}** No evidence was presented to indicate that the Task Force engaged in deliberations during the bus tour. Esrati was not present on the bus or on the tour of Valerie Elementary, and, therefore, had no knowledge of what transpired. The only other witness at the preliminary injunction hearing was Dr. Lolli, who testified that she could not address whether Task Force members talked among themselves while on the bus because she was in the front of the bus and it was very loud. She further said that the members did not talk among themselves while they were inside the school. Instead, they were simply given a tour of the facility, during which maintenance problems, including asbestos, were pointed out. Lolli also said that members asked questions about the particular maintenance issues, and that she did not recall many questions, as the group was not in the school very long. This was the extent of the evidence, and there was no indication that Task Force members did anything other than collect information.

**{¶ 25}** Concededly, one would not expect Esrati to testify about meetings to which he was not admitted. However, that is the function of discovery. Esrati could have taken depositions of any or all individuals who were present, including media observers.

The trial court even ordered Defendants-Appellees to answer interrogatories that Esrati had submitted, although their answers were not due until after the discovery deadline had passed.   *See* Doc. #73 (Decision Requiring Defendants to Answer or Object to Plaintiff's Interrogatories), p. 1.

{¶ 26} In addition, the trial court made the following comments in the decision ordering discovery:

Further, Defendants have filed Motions for Summary Judgment about to be ripe for decision, [Plaintiff] having responded and now awaiting replies.  The Court confirmed on the record that Mr. Esrati's discovery requests are not necessary for his summary judgment response and Mr. Esrati acknowledged and agreed that nothing further was necessary to be filed in support of his memorandum contra motions for summary judgment.

Depositions for discovery purposes may be taken upon a showing of good cause as to why they were not taken within the discovery deadline set by the Court.

Doc. #73 at p.1.

{¶ 27} Thereafter, Esrati made no attempt to take depositions, nor did he submit any additional evidence in opposition to the summary judgment motions.   The trial court then rendered summary judgment in favor of the Defendants.   In the summary judgment decision, the court noted that Esrati failed to present any further evidence after the court denied the request for a preliminary injunction.   *See* Doc. #83 at p. 1.

{¶ 28} Although Esrati is a pro se litigant, we have long stressed that "pro se litigants are held to the same standards as other litigants."   *Cox v. Oliver*, 2d Dist.

Montgomery No. 26515, 2015-Ohio-3384, ¶ 20. Consequently, Esrati's failure to present evidence cannot be excused by his status as a pro se litigant.

{¶ 29} Based on the preceding discussion, we agree with the trial court that Esrati failed to provide evidence that the Task Force conducted anything other than information-gathering during the private tour, and therefore the Board's subsequent actions were not invalidated under R.C. 121.22(H).

{¶ 30} As a final matter, we note that Ex. 3 includes a discussion between Dr. Lolli and the DPS Director of Media and Public Relations in which the Media Director stated that sending information to every task member by phone ("i.e., conference calls") would ensure that "there won't be any public records of that, either." To the extent this implies that the Open Meetings Act could be circumvented by this avenue, we note that the Supreme Court of Ohio made the following comments in *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, 60 N.E.3d 1234:

Nothing in the plain language of R.C. 121.22(B)(2) expressly mandates that a "meeting" occur face to face. To the contrary, it provides that *any* prearranged discussion can qualify as a meeting. Accordingly, R.C. 121.22 prohibits any private prearranged discussion of public business by a majority of the members of a public body regardless of whether the discussion occurs face to face, telephonically, by video conference, or electronically by e-mail, text, tweet, or other form of communication.

* * *

* * * Allowing public bodies to avoid the requirements of the Open Meetings Act by discussing public business via serial electronic

communications subverts the purpose of the act.

(Emphasis sic.) *Id.* at ¶ 15 and 18.

**{¶ 31}** Based on the preceding discussion, Esrati's sole assignment of error is overruled.

## III.   Conclusion

**{¶ 32}** Esrati's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

David Esrati
John C. Musto
Brian L. Wildermuth
Zachary J. Coultier
Hon. Richard Skelton